UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Nico Redding,

                    Plaintiff,

   vs.

Jan Hanlon, Officer Peine,
Sgt. Starkson, Lt. Krogh,
Warden Stender, CPD J.
Carter, Nanette Larson,
Warden Roehrich, and Kim
Clifford,

                    Defendants.        Civ. No. 07-1576 (DWF/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Defendants to Dismiss.  For these

purposes, the Plaintiff Nico Redding ("Redding") appears pro se; and the Defendants

appear by Margaret E. Jacot, Assistant Attorney General for the State of Minnesota.

For reasons which follow, we recommend that the Defendants' Motion to Dismiss be granted in part.

## II. Factual and Procedural History

Redding is a prisoner of the State of Minnesota, and is currently incarcerated at the Minnesota Correctional Facility, in Faribault, Minnesota ("MCF-FB"). On March 20, 2007, he commenced this action under Title 42 U.S.C. §1983, alleging violations of his rights under the Eighth and Fourteenth Amendments. The Defendants all work in some capacity at MCF-FB: Jan Hanlon ("Hanlon") is the Health Services Director; Officer Peine ("Peine"), Sergeant Starkson ("Starkson"), Lt. Krogh ("Krogh"), and Kim Clifford ("Clifford"), are officers; and Warden Stender ("Stender"), CPD J. Carter ("Carter"), Nanette Larson ("Larson"), and Warden Roehrich ("Roehrich"), appear to occupy supervisory roles. On May 21, 2007, the Defendants filed their joint Motion to Dismiss, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

The bulk of the facts, which underlie Redding's claims, arise from two (2) separate incidents that transpired at MCF-FB: a cell transfer, and a cell search. We commence with his allegations concerning the cell transfer. In his Complaint, Redding alleges that, on August 8, 2006, he was transferred from a relatively quiet cell

in a low-traffic area of the medical unit at MCF-FB (the "original cell"), to a different cell, which was located along a high-traffic corridor in the same unit (the "new cell"). See, Complaint, Docket No. 1, at 4, ¶¶1-2, at 7, ¶A.  Redding alleges that Peine came to his original cell on August 8, and directed him to move to the new cell.  Id. at 4, ¶¶1-2.  When Peine ordered Redding to pack his belongings, Redding replied that he was unable to move his belongings, because his physician had directed him to lift no more than twenty (20) pounds.  Id. at 4, ¶4.  Redding alleges that he showed Peine two (2) authorization forms, which were signed by his physician (the "authorization forms"), to document that medical restriction.[1]  Id.  Redding told Peine that he needed help moving his belongings, as well as his bed, to the new cell.  Id., at 5, ¶4.  Redding alleges that Peine then left the original cell.  Id. at 5, ¶5.

As related by Redding, approximately twenty (20) minutes later, three (3) guards came to the original cell, handcuffed him, took his cane, and brought him to a detention cell.  Id.  After approximately ninety (90) minutes, Redding was visited by Lt. Williams ("Williams"), who was the acting watch commander, and who asked

---

[1]According to Redding's Complaint, Peine later informed Redding that he had called a nurse at MCF-FB's Health Services Unit, after his initial conversation with Redding, and the nurse had informed Peine that she had no record of any medical restrictions for Redding.  See, Complaint, Docket No. 1, at 7 ¶11.

what had transpired between Redding and Peine. <u>Id.</u> at 5, ¶¶5-6. Redding recounted

his conversation with Peine, and Williams reviewed both Peine's report and Redding's

authorization forms. <u>Id.</u> at 5, ¶6. Williams then asked Redding if he would agree to

the cell transfer, on condition that he had help moving his belongings. <u>Id.</u> Redding

replied that he would, and Williams directed him to return to his original cell, in order

to pack. <u>Id.</u> at 5, ¶¶6-7.

According to Redding, three (3) inmates helped Redding move his bed, while

two (2) other inmates moved his belongings to the new cell, which was located two

(2) hallways away from the original cell. <u>Id.</u> at 5-6, ¶¶7-8. Redding alleges that the

stress of his confrontation with Peine, coupled with his efforts to walk between the

original cell and the new cell, in order to supervise the move, made him dizzy and

weak. <u>Id.</u> at 6, ¶8. He alleges that he had difficulty breathing, and experienced chest

pains, so he sat on the floor of the hallway for nine (9) minutes, before another inmate

helped him to his feet. <u>Id.</u> Another inmate then provided Redding with a wheelchair

to sit in, and Redding took a "nitro-pill," which provided relief after approximately

four (4) minutes. <u>Id.</u> at 6, ¶9. Because he felt stressed by the day's events, Redding

contends that he did not promptly move his bookshelf from the original cell to the new

cell, but that he planned to retrieve it the next day. <u>Id.</u> at 7, ¶12. He alleges, however,

that when he went to retrieve his bookshelf from his original cell, Peine had told the guards on duty not to let Redding have it.  Id.

With respect to the cell transfer, Redding asserts that he was moved to the new cell because William Myears ("Myears"), the inmate who had been housed in the new cell, had requested a cell in a low-traffic area.  Id. at 7, ¶A.  Redding alleges that Myears made the request because of his medical condition, which required privacy for certain hygiene issues, and which required less noise than existed along the high-traffic corridor.  Id.  Redding contends that Hanlon made the decision to move Myears to a cell, in a low-traffic area, based on Myears' medical needs.  Id. at 7, ¶B.  According to Redding, another inmate, James Goebel ("Goebel"), was first directed to switch cells with Myears, but Goebel refused because of his partially paralyzed arm, and because Hanlon had promised Goebel that he could remain in his particular cell.  Id. at 8, ¶E.  At that point, Peine apparently directed Redding to move instead.

Based on these events, Redding alleges a violation of his rights under the Eighth Amendment.  He alleges that he, like Myears, requires privacy in order to address his hygiene issues.  Id. at 8, ¶D.  He also contends that he, like Myears, does not "want to be constantly disturbed by a lot of noise."  Id.  Accordingly, Redding maintains that, when the Defendants transferred him to the new cell, they were deliberately

- 5 -

indifferent to his "medical conditions, accommodations, and prescribed medical treatment[.]" Id. at 4.

Redding also alleges that the Defendants' conduct, during the cell transfer, denied him equal protection of the laws under the Fourteenth Amendment. First, Redding, who is black, contends that he was taken to a detention cell when he initially refused to pack his belongings and move, while Goebel, who is white, was not disciplined at all for refusing to move. Id. at 8, ¶¶E-F. Second, Redding alleges that the Defendants acted in a racially discriminatory manner when they provided Myears, who is white, with the original cell to accommodate his medical condition, while moving Redding to the new cell, despite Redding's medical conditions which, he contends, are "just as valid and real and important" as those of a white inmate. Id. at 8, ¶F. Third, Redding contends that Peine, and Hanlon, would not allow him to retrieve his bookshelf because of his race, and he contends that three (3) white inmates were able to have bookshelves in their cells. Id. at 8-9, ¶F.

Turning to Redding's allegations with respect to the cell search, as related in his Complaint, on August 28, 2006, several weeks after the cell transfer, Clifford

searched his cell, after directing Redding to leave.[2]  <u>Id.</u> at 10, ¶1.  According to Redding, many of his legal papers were confiscated during the cell search, including legal papers which belonged to other prisoners.  <u>Id.</u> at 10-11, ¶5.  Specifically, Redding claims that Clifford confiscated Affidavits, a Habeas Corpus Petition and supporting Memorandum, and legal briefs, all of which belonged to other inmates, although Redding had apparently assisted those inmates with preparing those documents.  <u>Id.</u>  Redding also claims that Affidavits of other inmates, which were in support of his own civil action, were confiscated.  <u>Id.</u> at 10, ¶5, at 11, ¶6.  Redding further claims that both letters, which complained about allegedly illegal conduct by prison staff, and Motion papers were confiscated, although it is not clear from his Complaint whether those papers belonged to Redding, or to other inmates.  <u>Id.</u> at 11, ¶5.

As recounted by Redding, after the papers were confiscated, Starkson advised him that he would be prosecuted, and placed in segregation, for possessing the legal papers that were found during the cell search.  <u>Id.</u> at 11, ¶6.  Redding alleges that Starkson also advised that all of his legal documents would be destroyed.  <u>Id.</u> at 11,

---

[2]According to Redding, Clifford's search lasted approximately seventy-five (75) minutes, and a typical cell search lasts only sixteen (16) minutes.  See, <u>Complaint</u>, supra at 10, ¶2.

¶6, at 12, ¶8.  Further, Redding alleges that Starkson told him to refrain from assisting other inmates with their civil and criminal cases, or he would face one (1) year in segregation.  Id. at 14, ¶16.

In addition to his complaints about the cell search, Redding claims that MCF-FB advised its inmates that they could not use the typewriter in the facility's law library, or make photocopies, or conduct legal research, for any civil action, or for any criminal matters, other than those which related to their current confinement.  Id. at 11, ¶7.  Redding contends that he learned of those policies through memoranda sent by MCF-FB.  Id.

Accordingly, Redding alleges that the Defendants violated his constitutional right of access to the Courts, both during the cell search, and through their policy.  Id. at 12, ¶9.  Redding maintains that he has the right to obtain evidence from other prisoners, such as Affidavits, in order to support his claims.  Id.  He also alleges that he has the right to keep legal materials, which belong to other inmates, in his cell, in order to read them.  Id. at 12, ¶11.  Finally, Redding contends that he has a right to help other inmates with their legal actions.  Id. at 12, ¶10.

## III.  Discussion

As noted, in Count I of his Complaint, Redding alleges that the Defendants were deliberately indifferent to his serious medical conditions, and acted in a racially discriminatory manner, when they conducted the cell transfer, in violation of the Eighth and Fourteenth Amendments.  See, <u>Complaint</u>, supra at 4, 8.  In Count II, Redding asserts that the Defendants interfered with his right of access to the Courts, when they confiscated legal materials during the cell search, and when they informed him that he could not assist other inmates, and that he could not use a typewriter, make photocopies, or conduct legal research, with respect to any civil actions, or with respect to any criminal matters other than his current, underlying offense.  <u>Id.</u> at 10, 11-12.  Redding seeks declaratory relief, as well as compensatory and punitive damages.  <u>Id.</u> at 15-16.

The Defendants move to dismiss Redding's claims, for failure to state a claim. See, <u>Rule 12(b)(6)</u>, <u>Federal Rules of Civil Procedure</u>.  First, the Defendants Stender, Carter, Larson, and Roehrich, contend that Redding has not alleged, in his Complaint, that they were personally involved in the cell transfer, or in the cell search, nor has he alleged that they failed to adequately train or supervise their subordinates, or that they adopted an unconstitutional policy.  See, <u>Defendants' Memorandum in Support</u>,

Docket No. 10, at 3-4.  Second, the Defendants urge that Redding failed to adequately allege any constitutional claim.  Id. at 5.  Accordingly, the Defendants argue that Redding's claims should be dismissed in their entirety.  We address each claim in turn.

      A.    Standard of Review.  "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]."  Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).  In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party.  See, Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."  Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998), cert. denied, 525 U.S. 921 (1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Although Redding submitted numerous materials, in opposition to the Defendants' Motion, because our decision rests entirely upon the pleadings, we

analyze the Defendants' Motion under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.

B.   Legal Analysis.

1.   The Defendants Stender, Carter, Krogh, Larson, and Roehrich.

1)   Standard of Review.   In order to sustain a claim under Section 1983, a plaintiff must show that the named defendants were directly, and personally, involved in the illegal acts, or in the policy decision which created the unlawful context for those acts.  See, e.g., Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001); McNair v. Norris, 2000 WL 490709 at *1 (8th Cir., April 27, 2000); Martin v. Sergeant, 780 F.2d 1334, 1337 (8th Cir. 1985).   Accordingly, the doctrine of respondeat superior is not available to a Section 1983 plaintiff.  See, e.g., Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Rasmussen v. Larson, 863 F.2d 603, 605 (8th Cir. 1988).

Moreover, a warden's, or other official's, "'general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997), quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995); see also, Brisco-Wade v. Carnahan, 149 F. Supp.2d 891, 899 (E.D. Mo. 2001); Krein v. Norris,

2001 WL 33406651 at * 3 (E.D. Ark., May 19, 2000).  Absent a showing of direct and personal involvement, the only other basis, upon which a plaintiff may state a claim against a defendant, is by demonstrating that the particular defendant failed to properly train, supervise, or control, the actions of a subordinate who invaded the plaintiff's rights.  See, <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989); <u>Ruge v. City of Bellevue</u>, 892 F.2d 738, 739-40 (8th Cir. 1989); <u>Crooks v. Nix</u>, 872 F.2d 800, 804 (8th Cir. 1989).

        2)    <u>Legal Analysis</u>.  We agree with the Defendants that, in his Complaint, Redding has not alleged that Stender, Carter, Larson, and Roehrich, were personally involved either in the cell transfer, or in the cell search.  Indeed, Redding makes no mention of these Defendants in his Complaint, other than in the caption.[3]

However, Redding apparently intended that his responsive Memorandum would supplement, rather than supercede, his original Complaint.  See, <u>Plaintiff's Letter</u>, <u>Docket No. 17</u>; <u>Plaintiff's Memorandum in Opposition</u>, <u>Docket No. 16</u>.  Although that practice is not permissible under the Local Rules of this District, see <u>Local Rule 15.1</u>,

---

[3]The same is true of the Defendant Krogh, who is not mentioned in the Complaint, except for in the caption.  However, the Defendants have not asked us to dismiss Krogh, for failure to plead any facts, as they have asked for dismissal of Stender, Carter, Larson, and Roehrich.

we have afforded Redding the benefit of liberal construction, and have considered all

of the allegations in **both** his original Complaint, and his responsive Memorandum.

First, with respect to Roehrich, Redding alleges that, during the course of his cell

transfer, Roehrich visited the medical unit at MCF-FB, and he informed her of his

allegations, that the cell transfer violated his constitutional rights.   See, Plaintiff's

Memorandum in Opposition, supra at 16.  Accordingly, giving his allegations a liberal

construction, we conclude that Redding has alleged that Roehrich failed to properly

supervise or control her subordinates, by acquiescing in the allegedly unconstitutional

conduct of her subordinates.  Id.  Therefore, to the extent that Redding has stated any

constitutional claims which arise from the cell transfer, we conclude that he has pled

facts to state such claims against Roehrich.

Next, with respect to Stender, Carter, Larson, and Roehrich, Redding contends

that those Defendants knew of the allegedly unconstitutional conduct of their

subordinates, with respect to Redding's claims, because he informed them through

kites, letters, and other complaints.[4]  Id. at 18.  Again, Redding alleges that those

---

[4]Redding makes the same allegation with respect to Krogh.  See, Plaintiff's
Memorandum in Opposition, supra at 18.  Accordingly, although the Defendants have
not asked us to dismiss Redding's claims against Krogh, for failure to plead any facts,
we conclude that, to the extent that Redding alleges a claim which arises out of the
(continued...)

Defendants failed to properly supervise or control their subordinates, because they failed to rectify the violation of Redding's constitutional rights.  Id.  Since Redding alleged that those Defendants failed to properly supervise or control the actions of the personnel who were involved in the cell transfer and cell search, we find that Redding has stated a claim against Stender, Carter, Larson, and Roehrich, but only to the extent that he has stated any constitutional claim arising out of the cell transfer, or the cell search.  Therefore, we now consider whether he has alleged any violation of his constitutional rights.

2.     The Plaintiff's Eighth Amendment Claim.  It is well-established that deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment.  See, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Albertson v. Norris, 458 F.3d 762, 765 (8th Cir. 2005).  "A prisoner's Eighth Amendment rights are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'"  Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003), quoting Estelle v. Gamble, supra at 106.  To prevail on a claim of constitutionally inadequate medical care, an inmate must "demonstrate (1) that [he] suffered objectively serious

---

[4](...continued)
cell transfer, or the cell search, the claim may proceed against Krogh for failure to supervise or control his subordinates, as with Stender, Carter, Larson, and Roehrich.

medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997), citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005); Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003); Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Dulaney v. Carnahan, supra, citing Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

"Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002). However, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000), quoting Estate of Rosenburg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995), see also, Smith v. Clarke, 458 F.3d 720, 724 (8th Cir. 2006); Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999)("'Mere

negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'"), quoting Dulaney v. Carnahan, supra at 1239; DeGidio v. Pung, 920 F.2d 525, 532 (8th Cir. 1990)("[T]he eighth amendment does not transform medical malpractice into a constitutional claim.").

Our initial inquiry focuses on whether Redding alleged that he suffers from an objectively serious medical need. See, Jolly v. Knudson, supra at 1096. A serious medical need is 'one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Vaughn v. Greene County, 438 F.3d 845, 851 (8th Cir. 2005), quoting Pool v. Sebastian County, Arkansas, 418 F.3d 934, 944 (8th Cir. 2005), quoting, in turn, Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991); Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006). We acknowledge that Redding has not identified, by name, his medical conditions, which he alleges as requiring the relative seclusion of a cell in a low-traffic corridor, so that he may properly attend to his hygiene needs.[5] See, Grayson v. Ross, supra at 809, citing Aswegen v. Henry, 49 F.3d 461, 464 (8th Cir. 1995)("To constitute an objectively serious medical need or deprivation of that need * * * the need or deprivation alleged must either be obvious

_____

[5]In his responsive Memorandum, Redding does allege that his medical conditions are related to his swollen prostate. See, Plaintiff's Memorandum in Opposition, supra at 11.

to the layperson or supported by medical evidence, like a physician's diagnosis."),
citing, in turn, Beyerbach v. Sears, 49 F.3d 1324, 1326-1327 (8th Cir. 1995),
abrogation on other grounds recognized by Reece v. Groose, 60 F.3d 487, 492 (8th Cir.
1995); Johnson v. Busby, supra at 351.  Instead, Redding only alleges that he has
medical conditions which require treatment, and which result in those hygiene
concerns.  See, Complaint, supra at 4, at 8 ¶¶D, F.

Nevertheless, we proceed with our analysis, without deciding whether Redding
has satisfactorily pled the first prong of an Eighth Amendment claim, for purposes of
surviving a Motion to Dismiss, because we find it necessary to determine whether
Redding has alleged that the Defendants exhibited deliberate disregard for his medical
needs.  See, Grayson v. Ross, supra at 808-09.

In his Complaint, Redding alleges that Hanlon, and Peine, were deliberately
indifferent to his "medical conditions, accommodations, and prescribed medical
treatment authorizations," during the cell transfer.  See, Complaint, supra at 4.
Construing Redding's Complaint generously, we understand his claim against Peine
to be that Peine interfered with Redding's prescribed treatment -- namely, the lifting
restrictions which Redding alleges were imposed by his physician -- when he directed

Redding to pack and move his belongings to the new cell.[6]  Id. at 4, ¶4; see also,

Plaintiff's Memorandum in Opposition, supra at 8-9; Estelle v. Gamble, supra at 106

("[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent

standards than formal pleadings drafted by lawyers[.]'"), quoting Haines v. Kerner,

---

[6]Although Redding also alleges that Hanlon was deliberately indifferent to his medical conditions and prescribed treatment, see, Complaint, supra at 4, he has not alleged any facts to show that she disregarded or interfered with his prescribed lifting restrictions in any way.  Therefore, we conclude that he has not stated a claim against Hanlon, with respect to his prescribed treatment.

Moreover, we acknowledge that, in his Complaint, Redding describes a number of symptoms, which he alleges were brought on when he exerted himself to supervise the inmates who were moving his belongings to the new cell.  See, Complaint, supra at 6, ¶¶8-9.  We conclude that Redding has not alleged any Eighth Amendment violation, on the basis of those symptoms, as he has not alleged that any Defendant directed him to so exert himself, or was deliberately indifferent to his symptoms -- which, according to Redding, lasted for only thirteen (13) minutes.  Moreover, we are unable to conclude that those symptoms establish an objectively serious medical need. See, Knight v. Dutcher, 2007 WL 2407034 at *6 (D. Neb., August 20, 2007)("[T]he symptoms described in plaintiff's evidence [which included a spinning head, diarrhea, thirst, migraines, and an inability to sleep], although perhaps significant while they lasted, did not rise to the level of 'serious' medical needs."), citing Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)(holding that symptoms of breathing problems, chest pains, dizziness, sinus problems, headaches, and loss of energy, due to second-hand smoke, are not sufficiently serious to state an Eighth Amendment claim), and Turner v. Dallas County Jail, 2006 WL 1388441 at *4 (N.D. Tex., May 17, 2006)(holding that an incident with symptoms of dizziness, increased temperature, shortness of breath, headache, and diarrhea, did not state an Eighth Amendment claim).

404 U.S. 519, 520-21 (1972); Stringer v. St. James R-1 School Dist., 446 F.3d 799, 802 (8th Cir. 2006).

"[I]ntentionally interfering with * * * treatment once prescribed" is a violation of the Eight Amendment, Estelle v. Gamble, supra at 104-05, and "[p]rison officials cannot substitute their judgment for a medical professional's opinion." Meloy v. Bachmeier, supra at 849, citing Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). In Johnson v. Hay, 931 F.2d 456, 461 (8th Cir. 1991), our Court of Appeals found that a prisoner had stated a claim for cruel and unusual punishment when he suffered two convulsions after a prison pharmacist deliberately refused to fill legitimate prescriptions, which had been written by prison physicians for anti-seizure medications, based upon the pharmacist's belief that the prisoner did not suffer from a seizure disorder. See also, Easter v. Powell, 467 F.3d 459, 463-64 (5th Cir. 2006)(deliberate indifference manifested by nurse who sent prisoner with heart problems to pharmacy, and refused to provide him with cardiac medications when he found the pharmacy closed); Meloy v. Schuetzle, 230 F.3d 1363, 2000 WL 1160446 at *1 (8th Cir. 2000)[Table Disposition](prisoner stated claim for violation of Eighth Amendment when prison officials denied him access to a physician-prescribed breathing apparatus).

In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court elaborated upon the "deliberate indifference" standard by enunciating a "subjective test of culpability." <u>Clark v. Armontrout</u>, 28 F.3d 71, 72 (8th Cir. 1994). There, the Court held that "a prison official cannot be found liable under the Eighth Amendment * * * unless the official knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, supra at 832; see also, <u>Brown v. Nix</u>, 33 F.3d 951, 955 (8th Cir. 1994). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, supra at 837. Accordingly, an official cannot be held liable for an act or omission which is unaccompanied by the knowledge of a significant risk of harm, as such action, or inaction, "cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." <u>Id.</u>

Here, although Redding alleges that Peine did not believe that he had a legitimate medical restriction, see, <u>Complaint</u>, supra at 5, ¶6, at 7, ¶11, Redding has not alleged that he was ever directed to lift more than twenty (20) pounds, after he showed Peine, and Williams, the authorization forms which imposed the medical restriction. See, <u>Gill v. Mooney</u>, 824 F.2d 192, 195 (2nd Cir. 1987)(Eighth Amendment claim properly dismissed, where prisoner alleged that correctional officer

"ignored medical orders in directing [prisoner] to move his personal belongings when he was transferred from one cell to another," but "[t]hose directions were not enforced, since [prisoner] concedes that he was given assistance in moving his possessions after the doctor's order was verified."). As a consequence, Redding has failed to allege that Peine interfered with any prescribed treatment, and therefore, he has failed to allege that Peine acted with deliberate indifference to his prescribed treatment, when he ordered Redding to move his belongings.

In his Complaint, Redding also claims that Hanlon, and Peine, were deliberately indifferent to his medical conditions, when they changed his housing assignment to the new cell, which was in a high-traffic area, despite "knowing that [Redding has] hygiene issues and medical conditions that require privacy[.]" See, Complaint, supra at 8, ¶D. Again, we conclude that Redding has failed to state a claim under the Eighth Amendment, since he has not alleged that he was "prescribed" a particular cell,[7] or

---

[7]Even in his responsive Memorandum, Redding does not allege that his physicians had ordered or authorized a particular cell to accommodate Redding's medical conditions -- he only complains that he requested a particular cell, but that his request was denied. See, Plaintiff's Memorandum in Opposition, supra at 14. He does allege that his physician had approved Redding for a single cell, but he also admits that single cells are not available in the medical unit, in which he resides at MCF-FB. Id. at 10. He further admits that he had a cellmate in his original cell, on the quieter corridor. See, Complaint, supra at 4, ¶1; Plaintiff's Memorandum in

(continued...)

that his medical care was inadequate, or that Hanlon, or Peine, engaged in any conduct which amounted to "intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." Meloy v. Bachmeier, supra at 848.

Further, we note that Redding has not alleged that he suffered any amount of harm as a result of the transfer. It is well-settled that "[t]he objective portion of the deliberate indifference standard requires a showing of 'verifying medical evidence' that the defendants ignored an acute or escalating situation or that delays adversely affected [the plaintiff's] prognosis, given the type of injury in [the] case." Dulaney v. Carnahan, supra at 1243, quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997); see also, Senty-Haugen v. Goodno, 462 F.3d 876, 890 (8th Cir. 2006), cert. denied, --- U.S. ---, 127 S.Ct. 2048 (2007); Coleman v. Rahija, supra at 785; Beyerbach v. Sears, supra at 1326. Although this action is at the pleadings stage, Redding has not alleged that his condition worsened, or that his general health deteriorated, as a result of the cell transfer. Redding has not alleged any facts which would satisfy the objective prong of the Farmer inquiry, that any deprivation was

---

[7](...continued)
Opposition, supra at 11.

"objectively, sufficiently serious." Farmer v. Brennan, supra at 834; compare St. Cin

v. Purkett, 68 F.3d 479, 1995 WL 603366 at *1 (8th Cir. 1995)[Table Disposition]

(Prisoner stated an Eighth Amendment claim where he alleged that prison officials

"knew of his medical prescription for 'lower walk and lower bunk due to leg

problems,'" but nevertheless refused to re-assign him to a first-floor cell); Davis v.

Hall, 992 F.2d 151, 153 (8th Cir. 1993)(Affirming dismissal where prisoner "has not

alleged that his injury went untreated or that the treatment he received was

inadequate," but "merely expressed his displeasure with the judgment of the medical

and prison personnel involved."). Therefore, we recommend that Redding's Eighth

Amendment claim be dismissed, in its entirety.

　　　　3.　　The Plaintiff's Equal Protection Claim.　Next, we consider

Redding's allegation that Peine, and Hanlon, engaged in racial discrimination, in

violation of the Fourteenth Amendment, when they executed the cell transfer. "The

heart of an equal protection claim is that similarly situated classes of inmates are

treated differently, and that this difference in treatment bears no rational relation to

any legitimate penal interest." Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir.

1998)[en banc], citing Timm v. Gunter, 917 F.2d 1093, 1103 (8th Cir. 1990), cert.

denied, 501 U.S. 1209 (1991); see also, Murphy v. Missouri Dep't of Corrections, 372

F.3d 979, 984 (8th Cir. 2004), cert. denied, 543 U.S. 991 (2004). "To succeed on an equal protection claim not involving a constitutional right, [an inmate] must show that the treatment he receives is 'invidiously dissimilar to that received by other inmates.'" Divers v. Dep't of Corrections, 921 F.2d 191, 193 (8th Cir. 1990), quoting Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984); Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995)(To state an Equal Protection claim, the inmate must allege "facts to show that he was treated differently from other inmates because he belonged to a protected class.").

Here, Redding has pled facts which allege a claim for discrimination based upon his race. As previously noted, Redding asserts that he is black, and that he did not receive the same treatment as several white inmates in the same unit. See, Complaint, supra at 8, ¶F. In support of this allegation, Redding asserts that he was denied a bookshelf, although white inmates were able to have bookshelves. Id. He alleges that he was disciplined for initially refusing to switch cells, while a white inmate was not disciplined for similar conduct.[8] Id. at 8, ¶E. He also contends that

---

[8]We note, here, the Defendants' contention that Redding's brief placement in a detention cell did not amount to "discipline." See, Defendants' Reply Memorandum in Support, Docket No. 26, at 7. At this time, however, we express no opinion on that aspect of the parties' dispute.

a white inmate was given a relatively secluded cell, because his medical condition created hygiene concerns which required privacy, while Redding was denied such a cell, even though he had similar medical needs.  Id. at 8, ¶¶D, F.  Finally, Redding alleges that Peine, and Hanlon, subjected him to this dissimilar treatment because he is black.  Id. at 8, ¶F.

We conclude that Redding has pled enough facts to demonstrate dissimilar treatment, based on his membership in a protected class.[9]  See, Davis v. Hall, supra at 152 ("Civil rights pleadings are construed liberally," but "they must not be conclusory and must set forth facts which state a claim as a matter of law."), citing Nickens v. White, 536 F.2d 802, 803 (8th Cir. 1976); compare, Nash v. Black, 781 F.2d 665, 669 (8th Cir. 1986)(Reversing summary dismissal, and noting that, although

---

[9]The Defendants argue that Redding was not similarly situated to other inmates, and accordingly, they contend that he cannot state an Equal Protection claim.  For example, with respect to Redding's claim that he was denied a bookshelf, the Defendants categorize Redding as a member of a class of "inmates given bookshelves who leave those bookshelves behind when they move," while the white inmates who had bookshelves are members of a class of "inmates given bookshelves."  See, Defendants' Memorandum in Support, supra at 10.  We think the Defendants cut too fine a point on Redding's allegations, since Redding claims that he was subject to different treatment than other inmates within the same unit at MCF-FB.  See, Complaint, supra at 8-9, ¶F-G.  Such an assertion, which we are required to accept as true, sufficiently alleges that he, and the referenced white inmates, were similarly situated.  Moreover, Redding's Complaint plainly alleges that the dissimilar treatment was racially motivated.  Id. at 8, ¶F.

"defendants may be able to articulate legitimate reasons why these inmates received furloughs and Nash did not, 'the court is not to anticipate defenses not obvious from the pleadings.'"), quoting <u>Munz v. Parr</u>, 758 F.2d 1254, 1258 (8th Cir. 1985); and <u>Williams v. Manternach</u>, 192 F. Supp.2d 980, 991, 992 (N.D. Iowa 2002)("In addition to such admittedly conclusory allegations of discriminatory intent, however, Williams pleads sufficient facts from which discriminatory intent can be inferred," and "[a]lthough there may be no difficulty on the part of the defendants in showing that the purported disparate treatment of 'lifers' has a rational basis, that issue is more properly addressed following the defendants' answer or upon a motion for summary judgment."); with <u>Peck v. Hoff</u>, 660 F.2d 371, 373 (8th Cir. 1981)(Affirming dismissal, under Rule 12(b)(6), where the inmate's "complaint, closely scrutinized but liberally construed, fails to allege that he or a class to which he belongs received treatment from the prison classification board which was invidiously dissimilar to that received by other inmates."), citing <u>Burns v. Swenson</u>, 430 F.2d 771, 778 (8th Cir. 1970), cert. denied, 404 U.S. 1062 (1972).

As this action progresses, it may be revealed that the allegedly dissimilar treatment is reasonably related to a legitimate penological interests, particularly given our obligation to extend deference to the policy choices of prison officials, but we may

not assume what has not been shown at this Motion to Dismiss stage. See, Murphy v. Missouri Dep't of Corrections, supra at 984 ("To succeed on an equal protection claim, [an inmate] must show [inter alia] * * * that the different treatment bears no rational relation to any legitimate penal interest."), citing Weiler v. Purkett, supra at 1051; Robinson v. Holinka, 2007 WL 1054283 at *8 (D. Minn., April 9, 2007)("[A]ny apparent infringement of the Plaintiff's equal protection rights, which is brought about by means of prison Regulations or policies, must be judged by a deferential standard, i.e., whether the policies are reasonably related to legitimate penological interests."), citing Turner v. Safley, 482 U.S. 78, 84 (1987). However, for purposes of surviving a Motion to Dismiss, we conclude that Redding has sufficiently alleged that the dissimilar treatment was solely due to racial animus, and he has asserted sufficient facts to state an Equal Protection claim, with respect to his bookshelf, medical accommodations, and discipline. See, Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992)("[I]f the state provides educational or vocational opportunities to its prisoners, it cannot deny equal access to such services to all prisoners absent a rational basis.").

Accordingly, we conclude that Redding may proceed on his Equal Protection claim, and we recommend that the Defendants' Motion to Dismiss, insofar as it relates to Redding's Equal Protection claim, be denied.

4.    The Plaintiff's Access-to-Courts Claim. In Count II of his Complaint, Redding alleges that Starkson, and Clifford, violated his right of access to the Courts by confiscating the legal papers in his cell, some of which belonged to other inmates, and by prohibiting him from providing legal assistance to other inmates. See, Complaint, supra at 10-11, ¶¶4-7. He also alleges that MCF-FB has an unconstitutional policy that prohibits inmates from using the law library for research, for typewriter use, and for photocopying, with respect to any civil actions, or criminal matters, other than as to the offense underlying their current incarceration. Id. at 14, ¶16. Upon indulgent review, we conclude that those allegations fail to state any actionable constitutional claim.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court explicitly recognized that prisoners retain a constitutional right to meaningful access to the Courts. The relevant inquiry, in determining whether prison authorities have impinged upon that right, is "whether the prisoner has been given a 'reasonably

adequate opportunity' to present his claim." Martin v. Tyson, 845 F.2d 1451, 1456 (7th Cir. 1988), citing Bounds v. Smith, supra at 825.

However, in order to prevail on an access to the Courts claim, Redding  must demonstrate some "actual injury."  See, Lewis v. Casey, 518 U.S. 343, 349 (1996); see also, White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007); Klinger v. Dep't of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)("In Lewis v. Casey, the Supreme Court held, based on principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim.").  There is no "abstract, freestanding right" of access to legal resources or legal papers; Redding must show that he has been deprived of some specific opportunity to defend himself, or to advance a viable legal claim, in some particular action.  See, Lewis v. Casey, supra at 351; White v. Kautzky, supra at 680; Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996).  He must also identify some specific injury that arose from that lost opportunity.  Id.

As our Court of Appeals has observed:

> To state a claim that a law library or legal assistance program violates [the right of access], inmates must assert that they suffered an actual injury to pending or contemplated legal claims. [Lewis v.] Casey, 518 U.S. [343], 116 S.Ct. at 2180. Alleging theoretical inadequacies is insufficient. Id.  Inmates must instead show, for example, that a complaint they prepared was dismissed due

> to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a claim for actionable harm at all.  Id.

Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996).

Here, Redding does not identify any specific instance in which he has been deprived of the opportunity to defend himself, or to advance a viable legal claim in some particular action, because his legal papers had been confiscated, or because the prison had a policy which limited the available resources for inmates' civil actions.[10]  "To the

---

[10]With respect to Redding's specific allegations about the policy, we observe that "[p]rison inmates have no constitutional right of access to a typewriter," see, American Inmate Paralegal Ass'n v. Cline, 859 F.2d 59, 61 (8th Cir. 1988), cert. denied, 488 U.S. 996 (1988), citing Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 858 (9th Cir. 1985), and we note that all of Redding's submissions are typed. Moreover, through our earlier Orders in this action, we have already concluded that Redding had ample opportunity to obtain any photocopies which were necessary to the prosecution of his present claims.  See, Orders, Docket Nos. 31, 41.  Indeed, his responsive Memorandum makes clear that he is able to obtain  photocopies by submitting his papers to prison staff.  See, Plaintiff's Memorandum in Opposition, supra at 19-A1.  Therefore, we conclude that Redding has not stated any constitutional claim related to his access to a typewriter, or his ability to obtain photocopies.

We acknowledge that "[t]he taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts."  Goff v. Nix, 113 F.3d 887, 892 (8th Cir. 1997), citing Tyler v. Woodson, 597 F.2d 643, 644 (8th Cir. 1979), citing in turn Tyler v. "Ron" Deputy Sheriff, 574 F.2d 427 (8th Cir. 1978).  Nevertheless, Redding has failed to allege any actual injury, which arose from the confiscation of his legal papers.  For the reasons expressed in the text of this Opinion, we conclude that Redding has not stated a claim, based on his right of access
(continued...)

contrary, plaintiff was able to bring the instant case and adequately assert his claims."

Burke v. Meyers, 1998 WL 1780695 at *2 (D.N.D., July 27, 1998).

The United States Supreme Court clarified the actual injury requirement in

Lewis v. Casey, as follows:

> An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense * * * [and] the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Lewis v. Casey, supra at 351.

Here, Redding has simply failed to allege that he suffered any injury, either from the

confiscation of his personal legal papers, or from the alleged policy. See, Hartsfield

v. Nichols, --- F.3d ----, 2008 WL 65598 at *6 (8th Cir., January 8, 2008)(Affirming

dismissal of access to Courts claim because, "[a]lthough [the inmate] has alleged facts

---

[10](...continued)
to the Courts.

which, if true, could constitute a **wrong**, he has not * * * articulated any manner in which he was **injured by** the offense.")[emphasis in original]; <u>Johnson v. Hamilton</u>, 452 F.3d 967, 974 (8th Cir. 2006)("[C]onclusory claims that [an inmate] was denied access to legal papers and the courts must fail * * * [where the inmate had not] even pleaded any facts that would support a finding of injury or prejudice."). Therefore, we conclude that Redding has failed to allege a constitutional claim, with respect to his right of access to the Courts.[11]

With respect to Redding's other allegation, that the legal papers of other inmates were confiscated during the cell search, we note Redding's contention, that he assisted other inmates with the preparation of their legal papers. See, <u>Complaint</u>, supra at 10, ¶4, at 11, ¶7. However, Redding is mistaken when he contends that he has a right to provide this assistance. <u>Id.</u> at 12, ¶10. "[A]n inmate simply does not

---

[11]Moreover, Redding contradicts himself, in his Complaint, with respect to his access to Courts claim. Although he contends that the policy precluded inmates from making use of the law library to prepare civil actions, see, <u>Complaint</u>, supra at 11, ¶7, he later claims that he pled guilty in a disciplinary action, in order to avoid segregation, so that he could retain access to his "resources, type-writer, paper, and [his] books" so as to draft his Complaint, "and work on [his] lawsuit." <u>Id.</u> at 14, ¶15. We conclude that Redding has implicitly acknowledged that he suffered no actual injury, as a result of the confiscation of his legal papers, or as a result of the alleged policy, and therefore, he has failed to state a constitutional claim with respect to his right of access to the Courts.

have the right to provide his fellow inmates with legal assistance." Gassler v. Rayl, 862 F.2d 706, 708 (8th Cir. 1988)[footnote omitted].

Nevertheless, "[w]hile there is no personal right to be a jailhouse lawyer, to assure access to the courts, a prison must allow prisoners to assist one another unless there is available to prisoners a reasonable, alternative means of legal assistance." Munz v. Nix, 908 F.2d 267, 268 n. 3 (8th Cir. 1990)[citations omitted].  Moreover, although "[a] jailhouse lawyer has no independent right to provide legal advice, [he] may assert the right on behalf of other inmates who are otherwise unable to obtain access to the courts." Goff v. Nix, 113 F.3d 887, 890 (8th Cir. 1997), citing Gassler v. Rayl, supra at 707, and Flittie v. Solem, 827 F.2d 276, 280 (8th Cir. 1987).  The question thus devolves to whether Redding has alleged standing to assert a right of access claim on behalf of any other inmates.

In this respect, the precedent of our Circuit is clear that "an inmate cannot bring a denial-of-access claim on behalf of another inmate who is able to bring such a claim in his or her own name." Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994), citing Hamm v. Moore, 984 F.2d 890, 893 (8th Cir. 1992), and Flittie v. Solem, supra at 279-81; see also, Johnson v. Esry, 210 F.3d 379, 379, 2000 WL 375269 at **2 (8th Cir. 2000)[Table Disposition].  In Hamm v. Groose, several jailhouse lawyers brought a

denial-of-access claim, alleging that their were precluded from providing inmates, who were housed in certain closed housing units, with "meaningful legal assistance." Hamm v. Groose, supra at 111.  Our Court of Appeals concluded that the jailhouse lawyers lacked standing to bring that claim, because "[n]owhere did they assert that inmates in the closed areas were prevented from receiving legal assistance or that they were unable to make such claims themselves." Id. at 112.  Instead, the plaintiffs had only asserted "that the quality of the legal assistance received by inmates in the closed units was impaired by prison policies." Id.

Here, Redding has alleged that he was informed that he could not assist other inmates with their civil or criminal actions.  See, Complaint, supra at 11, ¶7.  In his Memorandum, after construing his allegations broadly, Redding further alleges that MCF-FB does not provide any alternative assistance to other inmates.  See, Plaintiff's Memorandum in Opposition, supra at 19-A1.  However, Redding does not allege that the other inmates are unable to bring their own claims for denial of access to the Courts.  Instead, he only alleges that MCF-FB has a policy which limits the use of its law library to certain actions.  See, Complaint, supra at 12, ¶10.

Given the absence of any allegation that other inmates are unable to assert their own claims for denial of access, we conclude that Redding has not alleged sufficient

facts to demonstrate that he has standing to assert an access to Courts claim on behalf of any other inmates.  Accordingly, we recommend that the Defendants' Motion to Dismiss be granted, insofar as it relates to Redding's access to Courts claim.[12]

NOW, THEREFORE, It is --

RECOMMENDED:

That the Motion of the Defendants to Dismiss [Docket No. 9] be GRANTED in all respects except for the Plaintiff's claim, that the Defendants Officer Peine, and Jan Hanlon, denied him equal protection as to his bookshelf, medical accommodations, and discipline, and that the Defendants Warden Stender, CPD J. Carter, Nanette Larson, Warden Roehrich, and Lt. Krogh failed to properly supervise

---

[12]We briefly note that, in his responsive Memorandum, Redding contends that Starkson's conduct amounted to "harrassment [sic] and abuse of authority, and false prosecution."  See, Plaintiff's Memorandum in Opposition, supra at 19-C.  Redding then quotes a case on retaliatory conduct.  Id., citing, in part, Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990).  Although "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason," Cody v. Weber, 256 F.3d 764, 771 (8th Cir. 2001), citing Madewell v. Roberts, supra at 1206, we find no basis, in either Redding's Complaint, or his responsive Memorandum, to find that he has stated a claim for retaliation against Starkson.  He alleges only that Starkson enforced the policy, and instructed Redding not to help other inmates with their legal actions.  We have already concluded that Redding failed to state any constitutional claim based on that policy, or his assistance to other inmates, and we further conclude that Redding has failed to allege any facts which support a claim of retaliation against Starkson.

and control Officer Peine and Jan Hanlon in this respect, which should be allowed to proceed.


Dated:  February 6, 2008                    s/Raymond L. Erickson
                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 25, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 25, 2008,** unless all interested

- 37 -

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.